UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRENDA D.,

                         Plaintiff,

v.                                                       6:19-CV-6830
                                                           (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     JEANNE MURRAY, ESQ.
  Counsel for Plaintiff                                  KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                 BLAKELY PRYOR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II  DENNIS CANNING, ESQ.
  Counsel for Defendant                           KATHRYN SMITH, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 18.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.     RELEVANT BACKGROUND**

**A.     Factual Background**

Plaintiff was born in 1968. (T. 101.) She completed high school. (T. 273.) Generally, Plaintiff's alleged disability consists of traumatic brain injury, blood clots, and shoulder injury. (T. 102.) Her alleged disability onset date is July 6, 2015. (T. 101.) Her date last insured is December 30, 2020. (T. 12.)[1] Her past relevant work consists of medical motor and bus driver. (T. 20, 273.)

**B.     Procedural History**

On September 11, 2015, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 101.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 19, 2018, Plaintiff appeared before the ALJ, Ellen Parker Bush. (T. 29-95.) On November 17, 2018, ALJ Parker Bush issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-28.) On September 12, 2019, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

**C.     The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-22.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2020 and Plaintiff had not engaged in substantial gainful activity since July 6, 2015. (T. 12.) Second, the ALJ found Plaintiff had the severe impairments of: status post fracture right scapula, status post fracture left L5

---

[1]     Elsewhere in the record Plaintiff's date last insured is listed as December 30, 2019. (T. 295, 323.) Neither party disputes the ALJ's finding that Plaintiff's date last insured is December 30, 2020.

2

transverse process, left trochanteric bursitis, and degenerative joint disc of the bilateral hips.  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 14.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b); except Plaintiff could occasionally push or pull with the right upper extremities and bilateral lower extremities; no climbing of ladders, ropes or scaffolds; no crawling; and only occasional climbing of ramps or stairs, stopping, kneeling, crouching, and reaching with the right upper extremity.  (T. 15.)[2]  The ALJ also concluded Plaintiff must avoid concentrated exposure to unprotected heights.  (*Id*.)  Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 20-22.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's traumatic brain injury ("TBI") and resulting memory impairment at step two because she based her determination on an incomplete record and failed to account for limitations in the RFC.  (Dkt. No. 10 at 15-20.)  Second, and lastly, Plaintiff argues the ALJ failed to

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

properly evaluate the opinion evidence of record and she based the RFC upon her own lay interpretation of raw medical data, leaving an RFC unsupported by substantial evidence. (*Id*. at 21-26.) Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 17.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly determined Plaintiff's history of TBI was not severe. (Dkt. No. 13 at 17-22.) Second, and lastly, Defendant argues the ALJ properly weighed the medical and other opinions of record. (*Id*. at 22-30.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation

5

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV.   ANALYSIS

Plaintiff argues the ALJ's step two determination, that Plaintiff's memory issues status-post TBI were non-severe, was based on an incomplete record and therefore remand is necessary for further development of the record.  (Dkt. No. 10 at 15-.20.)  In addition, Plaintiff argues the ALJ's step two error is not harmless because the RFC fails to include any mental limitations.  (*Id*. at 18-20.)  For the reasons outline below, the ALJ did not fail to develop the record, her step two determination was proper and supported by substantial evidence, and lastly, any error at step two would be harmless.

Contrary to Plaintiff's assertion, the ALJ did not fail to fully develop the record.  First, at Plaintiff's hearing her attorney confirmed the record was complete and no additional records were submitted after the hearing.  *Curley v. Comm'r of Soc. Sec. Admin.,* 808 F. App'x 41, 44 (2d Cir. 2020) (ALJ did not fail to develop the record where ALJ discussed the medical records with plaintiff's attorney, attorney did not state anything needed to be obtained, and attorney did not submit records to district court).  At Plaintiff's hearing her attorney stated, "we have everything that's out there" and "the

record is complete." (T. 34.) Therefore, the ALJ reasonably relied on Plaintiff's assertion that no records were outstanding.

Second, although the record indicates Plaintiff received treatment from a neurologist, the alleged missing records were summarized in other treatment notations in the record. *See Blackman v. Berryhill*, No. 1:16-CV-00869, 2018 WL 3372963, at *4 (W.D.N.Y. July 11, 2018) (ALJ did not fail in his duty to develop the record where treatment summaries provided a comprehensive overview of plaintiff's mental health progress over the course of his treatment); *see also Aman v. Colvin*, 46 F. Supp. 3d 220 (W.D.N.Y. 2014) ("[physician] informed the Social Security Administration that the treatment history summary she had sent was all that she was able to produce ... it appears that the Commissioner obtained all that there was to obtain, and plaintiff's contentions that more records existed, or that such records, if they did exist, would have supported her claim of disability, are wholly speculative").

On October 1, 2015, Plaintiff informed her treating source, Marina Ma, M.D., she had followed up with neurology and was taken off medication; however, she was still waiting for an appointment later that month. (T. 350.) Plaintiff informed Dr. Ma her memory was "not back to baseline but improved." (T. 350, 354.) Plaintiff saw an unnamed neurologist in October 2015 and July 2016 who reportedly observed Plaintiff had no significant neurological deficits. (T. 396, 415, 418.) Dr. Ma reviewed and summarized the treatment notes from the first appointment, and she reported that the neurologist had diagnosed a conversion disorder. (T. 396, 436, 441.) Dr. Ma also reviewed and summarized the treatment notes from the July 2016 appointment, at

7

which time Plaintiff sought treatment for dizziness and vertigo, not memory difficulties. (T. 415, 418.)

Plaintiff failed to submit or disclose records from these reported appointments; however, Dr. Ma summarized the content of the records and noted neither the neurosurgeon nor the neurologist thought Plaintiff had disabling neurological symptoms. (T. 396, 400-401, 439, 444.)  Indeed, Plaintiff informed Dr. Ma the neurologist did not "do her paperwork" and told her over the phone she "can work."  (T. 405.)  Dr. Ma and other medical providers opined from June 2016 through the remainder of the relevant period Plaintiff's memory was normal.  (T. 409, 429-30, 433-34, 467, 624.)  Therefore, although the ALJ did not have the alleged missing notations, the substance of the treatment was summarized in other treatment records.

Next, Plaintiff argues, even if the record were complete, the ALJ's step two determination finding Plaintiff's "mental limitations" nonsevere was not harmless because the RFC did not contain mental limitations and the ALJ failed to mention any mental limitations in her decision.  (Dkt. No. 10 at 20.)  Although Plaintiff asserts her mental limitations were "noted throughout the entirety of the medical record and presented as difficulty with memory and focus, dizziness, and headaches, and which were testified by Plaintiff at the hearing,"  Plaintiff only cites to her own testimony to support her assertion.  (*Id*.)

In general, at step two of the disability analysis, the ALJ determines whether plaintiff has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on plaintiff's ability to

perform basic work activities.  20 C.F.R. § 404.1520(c)[3].  The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including mental abilities of "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting."  *Id*. § 404.1522(b).

In addition, failure to find an impairment severe at step two may be harmless error if the ALJ clearly considered the effects of the impairment in the remainder of his analysis.  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps).

At step two, the ALJ discussed injuries due to Plaintiff's motorcycle accident.  (T. 13.)  The ALJ concluded Plaintiff "initially had very poor memory and insight due to her [TBI], subarachnoid and subdural hematomas, and trauma." (*Id*.)  However, the ALJ noted a month after the accident Plaintiff reported her memory was improving, five months after the accident Plaintiff denied all mental health difficulties.  (*Id*.)  The ALJ concluded Plaintiff's medically determinable mental impairment of memory issues did not cause more than minimal limitations in her ability to perform the basic demands of work and was therefore nonsevere.  (*Id*.)

---

[3] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

First, the ALJ properly considered Plaintiff's mental impairments at step two nonsevere and her determination was supported by substantial evidence.  Second, any error would be harmless because the ALJ discussed, and considered, all of Plaintiff's impairments in the subsequent steps of her determination.  Indeed, the ALJ considered treatment records noting Plaintiff's memory was improving.  (T. 17.)  The ALJ noted by October 2015 Plaintiff reported "occasional" dizziness and headaches.  (*Id.*)  Indeed, as cited by the ALJ, Dr. Ma opined Plaintiff's memory was "improved" in October 2015 (T. 350), and by June 2016, less than 12 months after her accident, Dr. Ma opined Plaintiff's memory was normal (T. 409).  Dr. Ma and other providers continued to observe that Plaintiff's memory was normal throughout her alleged period of disability (T. 429-430, 433-434, 467, 624).  The ALJ considered the opinions of both consultative examiners, Christine Ransom, Ph.D. and Dr. Dipeolu.  (T. 18, 20.)  Dr. Ransom opined Plaintiff had no limitations performing simple and complex tasks.  (T. 376.)  Dr. Dipeolu opined Plaintiff's medically determinable mental impairments were nonsevere.  (T. 106.)

Therefore, the ALJ did not fail to fully develop the record and her determination at step two was proper and supported by substantial evidence in the record.  Further, any error in finding Plaintiff mental impairments nonsevere was harmless because the ALJ discussed her mental impairments, and opinion evidence regarding those impairments, at subsequent steps.

Next, Plaintiff argues the ALJ failed to properly evaluate the opinion evidence of record and based the RFC on her own lay interpretation of raw medical data.  (Dkt. No. 10 at 21-27.)  Specifically, Plaintiff argues the ALJ improperly gave the greatest weight to the opinion of non-examining State agency medical examiner, R. Cohen, M.D., which

10

was based on an incomplete record, and improperly discounted the opinion from treating source PA Mesiti.  (*Id.*)

Dr. Cohen reviewed Plaintiff's record as of July 19, 2018 and completed a Physical Residual Functional Capacity Assessment form.  (T. 838-846.)  The doctor opined Plaintiff could occasionally lift and carry up to 50 pounds and frequently lift and carry 25 pounds.  (T. 840.)  He opined Plaintiff could stand and/or walk about six hours in an 8-hours workday; sit about six hours in an 8-hour workday; and could push and/or pull unlimited.  (*Id.*)  Dr. Cohen opined Plaintiff could frequently: climb ramps/stairs; balance; stoop; kneel; crouch; and crawl.  (T. 841.)  He opined Plaintiff could occasionally climb ladders, ropes, or scaffolds.  (*Id.*)  He opined Plaintiff could occasionally reach in all directions, including overhead, with her right upper extremity.  (T. 842.)  He indicated she was unlimited in her ability to handle, finger, and feel.  (*Id.*)  Overall, the doctor's opinion is consistent with the demands of medium work.  *See* 20 C.F.R. § 404.1567(c).

The ALJ afforded Dr. Cohen's opinion, "great weight."  (T. 19.)  The ALJ concluded the doctor was familiar with "the disability program" and was able to review the objective evidence through July 19, 2018.  (*Id.*)  However, the ALJ noted evidence submitted after Dr. Cohen's review and opinion, in addition to Plaintiff's subjective hip pain complains, supported greater exertional limitations than medium work.  (*Id.*)  Plaintiff appears to argue the ALJ impermissibly substituted her own lay opinion for that of Dr. Cohen in determining Plaintiff had greater limitations than provided by the doctor.  (Dkt. No. 11 at 22.)  However, remand is generally not warranted where the ALJ's RFC is more restrictive than the limitations set forth in the medical opinions of record.

*Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020); *see also Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (ALJ did not based RFC on raw data where he accurately summarized medical records including medical opinions and occasionally deviated from opinion evidence to decrease RFC based on other evidence in the record).

Although the ALJ afforded Dr. Cohen's opinion great weight, she ultimately based Plaintiff's physical RFC on the record as a whole. *See Snyder v. Saul,* 840 F. App'x 641, 643 (2d Cir. 2021) ("The ALJ was entitled to weigh all of the evidence and make an RFC finding that corresponds with the record as a whole."); *see Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018) (the ALJ is obligated to formulate a claimant's RFC based on the record as a whole, not just upon the medical opinions alone). After considering the record as a whole, the ALJ appropriately accounted for the physical limitations she found supported by the overall record by limiting Plaintiff to light work with additional non-exertional limitations. (T. 15.) The ALJ relied not only on Dr. Cohen's opinion, but also considered the examination and opinion provided by consultative examiner Rita Figueroa, M.D. (T. 20.) Dr. Figueroa, a physician who examined Plaintiff, opined she had some limitations in pushing and pulling with her right and left arms, but "no limitations to walking, standing, bending, lifting, or carrying." (T. 370.)

The RFC finding is not defective merely because it "does not perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." *Trepanier*, 752 F. App'x at 79; *see also Monroe v. Com'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (rejecting argument that remand was required because ALJ discounted

the only medical opinion such that "there was no competent medical opinion that supported the ALJ's RFC determination."). Although the ALJ did not adopt these opinions in their entirety, she adequately explained her reasons for not doing so. Accordingly, the Court finds that the ALJ did not substitute her own lay judgment for a competent medical opinion. *Wynn*, 342 F. Supp. 3d at 349 (W.D.N.Y. 2018). Therefore, Plaintiff's argument fails.

Lastly, Plaintiff argues the ALJ failed to properly weigh the April 2018 questionnaire from PA Mesiti. (Dkt. No. 11 at 23-26.) As a physician assistant, PA Mesiti was not an "acceptable medical source" during the time period relevant to the ALJ's decision. *See* 20 C.F.R. § 404.1513(a). Therefore, the ALJ had broad discretion to discount her statements and instead rely on other record physician opinions. *See Genier v. Astrue*, 298 F. App'x 105, 108-109 (2d Cir. 2008) (non-acceptable medical sources "do not demand the same deference as those of a treating physician," and an ALJ is "free to discount the assessments [of such sources] accordingly in favor of the objective findings of other medical doctors"). In addition, as noted by the Defendant, although Plaintiff refers to PA Mesiti as a "treating source," a review of the record indicates she treated Plaintiff on a single occasion for the purpose of completing her disability paperwork. (T. 622.)

The ALJ afforded PA Mesiti's opinion "little weight." (T. 19.) The ALJ concluded the limitations provided where inconsistent with treatment notations and the record as a whole including PA Mesiti's physical examination performed on the day she completed her opinion. (*Id*.) The ALJ also concluded Dr. Cohen reviewed PA Mesiti's report and found it "overly restrictive." (T. 19, 109.) Therefore, although she was a non-treating

non-acceptable medical source, the ALJ nonetheless properly weighed PA Mesiti's report and substantial evidence supported her determination.

The ALJ has the duty to evaluate conflicts in the evidence.  *See* 20 C.F.R. § 404.1567(c)(i); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: May 10, 2021

_William B. Mitchell Carter_
U.S. Magistrate Judge